# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WAYNE WATSON                              :
RHONDA WATSON                             :
DEBORAH WATSON                            :
TROY WATSON                               :
FITZGERALD WATSON                         :
                                          :
HEIRS TO THE ESTATES OF JAMES             :
WATSON JR. AND                            :          **Civil Action No:**
ANNIE WATSON                              :
     PLAINTIFFS                 :          **JURY TRIAL DEMANDED**
                                          :
V.                                        :
                                          :
SONNY PERDUE, SECRETARY                   :
UNITED STATES DEPARTMENT OF               :
AGRICULTURE, et al.                       :
                                          :
     DEFENDANTS.                 :

---

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND MONEY DAMAGES FOR VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

---

## THE  PIGFORD LITIGATION

Comes now Wayne Watson, Troy Watson, Deborah Watson, Rhonda Watson, and Fitzgerald Watson hereinafter ("Plaintiffs") ,  through counsel, and hereby alleges discrimination in the provision of United States Department of Agriculture (USDA) loan and credit benefit programs in violation of the Equal Credit Opportunity Act. . On or about October 30, 1999 Mr. James Watson Jr., the father of Plaintiffs  applied for relief in the **Timothy C. Pigford et a., v Dan Glickman**, Civil Action 97-1978 (**Pigford I**). [1] The

---

[1]     *Pigford v. Glickman* was a lawsuit filed by Timothy Pigford in 1997 against the U.S. Department of Agriculture (USDA), naming Secretary of Agriculture Dan Glickman as the defendant. Pigford, who was initially joined by an additional 400 plaintiffs (the case eventually

issue raised in this action has its origin in the class action lawsuit which was filed in 1997, by a group of African American farmers against the then Secretary of Agriculture, Dan Glickman in the case styled: *Timothy C. Pigford et a., v Dan Glickman*, Civil Action 97-1978 (**Pigford I**). The farmers alleged racial discrimination in the provision of USDA loans and other credit benefit programs. And, on October 21, 1998, Congress and the President, Bill Clinton, signed into law a special remedy for farmers to file suit under the: *Agricultural, Rural Development, Food and Drug Administration, and Related Agencies Appropriation Act,* Pub. L. No. 105-277, § 741, 112 Stat.2681 (codified at 7 U.S.C. § 2297, Notes (Waiver of Statute of Limitations).

1.   On October 21, 1998 Congress created as special remedy for non-employee claimants of racial discrimination against the United States Department of Agriculture (USDA) as provided for at Section 741 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999 and its pertinent parts as follows:

## Section 741: WAIVER OF STATUTES OF LIMITATIONS

(e) as used in this section, the term "eligible complaint" means a non-employment related complaint that was filed with the Department of Agriculture before July 1, 1997 and alleges discrimination at any time during the period beginning on January 1, 1981 and ending December 31, 1996--
(1) in violation of the Equal Credit Opportunity Act
(15 U.S.C. 1691 et seq.) in administering--
(A) a farm ownership, farm operating, or emergency loan funded from the
Agricultural Credit Insurance Program Account; or

---

expanded into class action lawsuit representing thousands of farmers), maintained that the USDA had discriminated against black farmers on the basis of race in determining how to allocate various government support loans, disaster payments, and other financial assistance to farmers and had failed to investigate or properly respond to complaints of this nature from 1983 to 1997.

(B) a housing program established under Title V of the Housing Act of 1949.

In October 1998 the District court certified a class for the purpose of determining the Department's liability. The class included all African-American farmers who (i.) farmed between 1981 and 1996 (ii.) applied to the Department for a federal credit or benefit program during that period and believed the department discriminated against their application on the basis of race, and (iii.) filed a discrimination complaint before mid-1997. <u>Pigford v. Glickman,</u> 185 F.R.D. at 92.

### <u>THE CONSENT DECREE</u>

After several months of negotiations, the parties reached a settlement of their claims and filed a proposed consent decree (the "consent decree"). See attached Exhibit A "Consent Decree". On April 14, 1999, the district court approved the Consent Decree. The Court certified the (<u>Pigford I</u> ) as a class action lawsuit and instructed tens of thousands of potential claimants to file their claims pursuant to a Consent Decree agreed upon by the parties.

2. The consent decree establishes a two-track claim resolution process to determine the validity of claims and appoints (or empowers the District Court to appoint) several third-party neutrals to administer the scheme. Depending on which track a claimant chooses, his claim is resolved by either an adjudicator (Track A) or an arbitrator (Track B).

3. Under Track A, a claimant's allegations are reviewed under the "substantial evidence" standard. A prevailing Track A claimant is entitled to a one-time payment of $50,000 and forgiveness of any debt he owes the USDA.

## I. PIGFORD CLAIMANTS

Rosa Watson (grandmother of Petitioner Wayne Watson and Plaintiffs herein Troy, Deborah, Rhonda, and  Fitzgerald ) and her son James Watson Jr.  (father of petitioner Wayne Watson and Plaintiffs herein ) farmed approximately 350 acres of cotton and soybean in the Mississippi River Delta near Mound Bayou Mississippi .Between 1981 and 1996. They both sought loans through the federal farm credit programs administered by the United States Department of Agriculture (the "department"). They were both denied access to those programs by the Department because of their race.

Rosa Watson and James Watson participated in the claims process established by the Pigford class action settlement Agreement to resolve their discrimination claims. Rosa Watson  and  James Watson Jr. were both successful  claimants under  the  Pigford v. Schafer case (Pigford I).

## ROSA WATSON

The adjudicator's original decision did not grant Ms. Watson any debt relief. Ms. Watson sought review of the adjudicator's decision by the monitor, The monitor found that the  adjudicator's denial /of debt relief constituted a fundamental miscarriage of justice. See Letter from Claims Facilitator re Monitor Review January 30, 2004. (Exhibit B attached hereto) He therefore directed the adjudicator to reexamine his decision. Upon reexamination

the adjudicator issued a revised decision. (See Decision of Adjudicator on reexamination) Exhibit C  On January 30, 2004 under Claim # 945 the Claims Facilitator issued a decision on reexamination overturning the original decision and granting relief with respect to the denial of Operating Loans in 1986 and 1987. USDA offered no evidence to detract from Claimant's assertion that she was denied a loan in 1986 and 1987. The adjudicator determined that claimant shall receive a $50,000 cash payment, shall be relieved of any USDA Operating Loan debt incurred by claimant between January 1, 1986, and December 31, 1996 and shall receive 25% of the cash payment and any debt relief in tax credits.

On January 30, 2004, after reexamination by the adjudicator, the Claimant prevailed on claims concerning the denial of Operating Loans. The claimant Rosa Watson received an operating loan in 1986. A portion of this loan was transferred to the Claimant's son, James Watson Jr. in 1990 and the balance of the loan was debt settled. ( See the attached Assumption Agreement , Exhibit  D. attached hereto .)

### JAMES WATSON JR.

James Watson Jr. was joined in the Pigford I claim by his wife Annie Watson. The adjudicator's original decision did not grant Ms. Watson any debt relief. Ms. Watson sought review of the adjudicator's decision by the monitor, the monitor found that the adjudicator's denial of debt relief constituted a fundamental miscarriage of justice (See Decision of the Monitor) Exhibit E attached hereto ).September 30,2006  . He therefore directed the adjudicator to reexamine his decision. Upon reexamination the adjudicator issued a revised decision. (See Decision of Adjudicator on reexamination Exhibit F. attached hereto). The

decision of the adjudicator on reexamination states that: claimant established upon reexamination his operating loans in 1989 and 1990 were funded late in the planting season his application for a 1992 operating loan was denied. He initially was not permitted to apply for a 1993 operating loan and later the loan funds were delayed. Similarly situated white farmers received timely operating loans 1989 and 1990, operating loans in 1992 and timely operating loans in 1993. He suffered financially as a result, on April 13, 2007, the Adjudicator, on reexamination on borrowers Pigford claim determined Borrowers were entitled to an additional relief. James Watson Jr. prevailed under the Consent Decree and was given additional debt relief in the form of a non cash credit in the amount of $135,796.56. This non cash credit was applied to the equity receivable account on April 13, 2007. The adjudicator determined that claimant shall receive a $50,000 cash payment, shall be relieved of any USDA Operating Loan debt incurred by claimant between February 2, 1989 and December 31, 1996 and shall receive 25% of the cash payment and any debt relief in tax credits.

On December 18, 2006 James Watson Jr. passed away. On December 31, 2008 Annie Watson passed away.

## MISAPPLICATION OF FUNDS TO THE SHARED APPRECIATION AGREEMENT

Since their father passed away in 2006, Petitioner Wayne Watson on behalf of Plaintiffs herein has rented farmland and borrowed money to pay USDA about $111,000.00 dollars from 2006 to present. See Exhibit G referenced above ( the Affidavit of Wayne Watson.) Those monies paid by the Watsons have been applied inappropriately to debt that should have been discharged under the Pigford Consent Decree . Some of the debt paid under the Shared Appreciation Agreement should have been the subject of debt relief as those monies stemmed from operating

loans, the kind of program the adjudicator applied debt relief to for both Rosa Watson and James Watson Jr.

## HISTORY OF THE SHARED APPRECIATION AGREEMENT

According to John S. Porter Farm Loan Chief from the Farm Services Agency's Mississippi State Office in Jackson Mississippi,  stated in a memorandum to Bobbie A. Butler, Farm Loan Manager  of Coahoma County  which memorandum is dated October 8, 2009and attached hereto as  collective Exhibit J. , On September 22, 1995 FSA approved a debt write down. FSA agreed to write down $259,283.19 and to restructure Borrowers remaining Farmer Ownership Loan in the amount of $132,688.27. The borrowers Annie Watson and James Watson received a $259,283.22 write down on October 20, 1995.  On October 20, 1995. Borrowers executed a new promissory note for $138,688.27 at five percent interest on October 20, 1995.

Ms Carolyn Cooksie Deputy Administrator for Farm Loan Programs , states in her letter of June 29, 2009 that

*As a condition of the benefit , they were required to Sign a Shared Appreciation Agreement (SAA) . At the end of 10 years, the borrower is required to repay an amount equal to 50 percent of the appreciation in the value of the land securing the debt to FSA.*

(See June 28, 2009 letter from Carolyn Cooksie Exhibit I attached hereto.)

The shared appreciation agreement matured on October 20, 2005. The amount of recapture was calculated to be $60, 819.

This $60, 819 amounted to $50% of the shared appreciation in the real property over the ten-year period of the SAA. Borrowers received FSA's notice of amount due under the SAA on August 24, 2005.

On August 19, 2005 FSA determined that Borrowers owed $60,819 under the matured Shared Appreciation Agreement Defendants. Since that time, Defendants have been applying monies paid by Plaintiffs to the balances under the shared Appreciation Agreement even those these loans are subject to debt relief.

### DEBT FORGIVENESS APPLIES TO ALL OF CLAIMANT'S LIABILITY

The Monitor appointed pursuant to the Consent Decree in the Pigford matter issued a Monitor Update regarding Debt Relief for Prevailing Class members Originally issued March 19, 2001 Revised July 11, 2008. (Exhibit H attached hereto) The Monitor Update provides that if the original debt is forgiven under Pigford the debt forgiveness applies to all claimant liability for the debt including shared appreciation and other similar obligations.

The Monitor Update provides at Page 5, Section (4)(g)

" *debt relief for prevailing class members includes cases where claimant received debt write-down from FSA. If the original debt is forgiven under Pigford, the debt forgiveness applies to all the claimant's liability for that debt including shared appreciation and other similar obligations.*"

### USDA HAS FAILED TO COMPLY WITH THE COURTS ORDER. USDA HAS FAILED TO GIVE PROPER CREDIT TO PLAINTIFFS FOR PAYMENTS MADE SINCE 2006.

Plaintiffs have paid $111,000.00 since 2006 (See affidavit of Wayne Watson Exhibit G attached , supra ) and have not been given proper credit for those amounts. USDA contends

that the estate remains indebted for $190,000.00 for a farm ownership loan made in 1990. ( See June 28, 2009 letter from Carolyn Cooksie Exhibit I attached hereto.)

Even though the notes under the Shared Appreciation Agreement are Operating Loans, subject to discharge USDA has not applied debt relief to those amounts. On May 10, 2010, after the Courts ruling in the Pigford case, USDA retaliated against the plaintiffs by submitting Collective Exhibit J an Affidavit of Lost Shared Appreciation Agreement which was prepared by USDA Farm Loan Manager Bobbie Butler and notarized by USDA Notary Public Pamela Vance. The re-created Shared Appreciation Agreement does not bare the signature of a borrower.

## FINDINGS OF THE APPEAL HEARING OFFICER

There exists an Appeal determination from the USDA Little Rock office dated January 14, 2010  which states that borrowers are indebted to FSA on one loan and have a balance due under a matured Shared Appreciation Agreement . The hearing officer points out in Paragraph 3 of his Findings of Fact On April 13, 2007, the Adjudicator on reexamination in Borrowers Pigford claim determined  the Borrowers( Rosa Watson and James Watson Jr. )  were entitled to additional relief. This relief included that required by the Consent Decree which specified relief of any USDA Operating Loan debt incurred by Claimant between February 2, 1989 and December 31, 1996 and 25 percent of the cash payment and any debt relief in tax credits. . The hearing officer noted that "

   " *debt relief for prevailing class members includes cases where claimant received debt write-down from FSA. If the original debt is forgiven under Pigford, the debt forgiveness applies*

*to all the claimant's liability for that debt including shared appreciation and other similar obligations."*

As noted above, the hearing officer here is quoting from the Monitor Update at Page 5, Section (4)(g)  See Appeal Determination Exhibit K attached hereto.

The debt written down under the SAA is forgiven under the Pigford analysis. All of the notes listed in  the Attached  Exhibit  J (The Lost Shared Appreciation Affidavit) that were the subject of the Shared Appreciation Agreement were to be forgiven pursuant to the Pigford Consent Decree as they arose out of the Operating Loan Program and it was Operating Loans where the Adjudicator found acts of discrimination against Rosa Watson and James Watson Jr.

## THE ADJUDICATOR FOUND DISCRIMINATION UNDER THE OPERATING LOAN PROGRAM

The debts to be discharged as a result of the Pigford settlement is the debt the Adjudicator found to have been affected by discrimination. The Monitor Update notes at Page 2 Section (4)(b) that: "Two important points flow from the finding of discrimination. The date creates an important starting point for debt discharge purposes. Second, the type of loan that was found to be the subject of discrimination matters for purposes of debt discharge. In general a loan is of the same type if it was incurred under the same loan program such as the Operating Loan Program The Farm Ownership Program and the Emergency Loan program are separate programs. .

The promissory notes for the amounts under the Shared Appreciation agreement are attached hereto. as Collective Exhibit L above. The Promissory Notes are clearly designated OL operating Loans. The Monitor found clear and manifest error resulting or

likely to result in a fundamental miscarriage of justice regarding: the late funding of

Operating Loans in 1989 and 1990. Therefore debt relief should have been applied to all of

these operating loans under the Shared Appreciation Agreement.

## USDA HAS FAILED TO DISCHARGE DEBTS OF PLAINTIFFS THAT ARE SUBJECT TO PIGFORD DEBT RELIEF

Prevailing claimants in the Pigford v. Schafer case have the right to debt relief.( See

Monitor Update: Debt Relief for Prevailing Class members Date Revised July 11, 2008)

Debt relief is the right to forgiveness of certain USDA farm loans that are still outstanding.

Debt relief for claimants who prevail on a credit claim is based on several legally binding

documents.

A. Consent Decree

The Consent Decree provides that a claimant who prevails on a credit claim receives

a discharge of certain outstanding USDA debts. The discharge applies to those debts

that were incurred under, or affected by the USDA program or programs that were

the subject of a prevailing credit claim. (Exhibit A. above)

B. February 7, 2001 Stipulation and Order

On February 7, 2001, Judge Paul Friedman signed a Stipulation and Order that

discusses the details regarding the debt discharge that claimants will receive in

credit cases. ( See Exhibit M attached hereto).

C. February 22, 2008 Opinion and Order

On February 22, 2008, Judge Paul L. Friedman signed an opinion and Order that interprets certain Consent decree provisions regarding debt relief. (See Exhibit  N attached hereto)

The Stipulation and Order provides that

 "on April 14, 1999 the court approved and entered a Consent Decree to bring resolution to the claims of race discrimination of the Plaintiff class members who opted to have their claims resolved under the processes provided in the Consent Decree".

The  Consent Decree provides that a class member who prevails on a claim of discrimination in connection with a credit transaction shall  be entitled to the discharge of all of his outstanding debt to the Farm Services Agency ("FSA") of the USDA that was incurred under , or affected by, the program(s) that was/were the subject of the discrimination claims resolved in the class member's favor.

## DEBT INCURRED UNDER OR AFFECTED BY THE DISCRIMINATORY EVENT

Section 9 (a) (iii) (A)  of the Consent Decree provides that:

*USDA shall discharge all of the class member's outstanding debt to  USDA that was incurred under or affected by , the program that was the subject of the ECOA claims  resolved in the class member's favor by the adjudicator. ……..*

 in connection with the ECOA claims resolved in the class member's favor by the adjudicator. When there is an ECOA violation (loan discrimination) in a previous year, any subsequent loan is tainted by previous discrimination

The Stipulation and order further states

**" The relief to be provided in 9 (a) (iii) (A) of the consent decree to a class member who prevails on a claim of credit discrimination includes all debts which were identified by the Adjudicator or the Arbitrator as having been affected by the discrimination.**

**The Consent Decree provides that**

**" in any case in which the adjudicator decides in a class member's favor….USDA shall discharge all of the class member's outstanding debt to USDA that was incurred under, or affected by the program(s) that were the subject of the ECOA claims resolved in the class member's favor by the adjudicator.¶ 9(a)(iii)(A)**

<u>**DEBTS INCURRED SUBSEQUENT TO THE DISCRIMINATORY EVENT**</u>

The court has established that the date of the discrimination matters for purposes of debt discharge. If the adjudicator found there was discrimination that took place in a loan denial that date creates an important starting point for debt discharge purposes. For example, if the Adjudicator found that USDA discriminated against the claimant in denying a Farm Operating Loan in 1990 and USDA then made a Farm Operating Loan to the claimant in 1995, the 1995 Operating Loan will be discharged. This is true even though the adjudicator did not find discrimination in the 1995 Operating Loan because the subsequent loan is tainted by the previous act of discrimination.

The February 22, 2008 Order and Opinion  <u>Pigford v. Schafer</u>, Civil Action No. 97-1978 (D.D.C. February 22, 2008)  states that the debt relief provisions of the Consent Decree entitle a prevailing class member to the discharge of all debts (1) directly affected by the defendant's discriminatory behavior toward the class member, and (2) all debts subsequently incurred in the same program(s) in which the prevailing class member suffered discrimination. <u>Pigford v. Veneman</u>, Civil Action No. 97-1978 (D.D.C. Feb. 7, 2001) ("Debt Relief Stipulation and Order")

The court in its 2008 opinion looks at a situation similar in some respects to the Watson case. There was also in that case a Shared Appreciation Agreement  The court notes in the 2008 opinion that the Defendant USDA is precluded from enforcing the shared appreciation agreement with respect to any Operating Loan or Emergency Loan originated after the applicable dates identified by the adjudicator in his revised decision.

## USDA NOTICES AND STATEMENTS OF ACCOUNT VAGUE AND INCONSISTENT

USDA has sent out to Mr. Watson various notices reflecting differing amounts on the balance of the loan such that is  difficult for him to know what is owed and what to pay . No Over the years as reflected in the attached statements, USDA notices have been  sent to Annie Watson and Wayne Watson  showing scattered and inconsistent amounts due. The statements show various balances not reflecting proper credit for payments made.  (See Collective  Exhibit O attached hereto)

All of these documents paint a confusing picture of the balance owed by Plaintiffs and misapplication of $111,000.00 previously paid by Plaintiffs.

Mr. Watson went into the office even as late as May 13, 2019 and was given the attached Exhibit P which sets out the amount of the original loan as $138, 688.27 and again is an extremely confusing ledger as to balances and what is actually owed. The document does not make clear the balance owed or even a clear history of credits to the account.

## CLAIMS FOR RELIEF

## INJUNCTIVE RELIEF

The Agency has issued  Notice of Intent to Accelerate   the underlying debts and to foreclose (See Attached Exhibit Q attached hereto) along with a Notice of Sale and Date of Sale set for  July 1, 2019)  (Exhibit R attached hereto)  Plaintiffs therefore seek a Temporary Restraining Order as set forth herein below to prevent the sale of their real property. Plaintiffs herein are in jeopardy of losing land that has been in their family for over a hundred years because they cannot obtain clear answers from the Farm Services Agency. Your Petitioners seek  the immediate termination of any foreclosure proceedings that USDA has initiated against any of the Watson family  member's real property

## ENFORCEMENT OF THE CONSENT DECREE

Plaintiffs herein seek enforcement of the provisions of the consent decree regarding debt relief as  Violation of the provisions of the consent decree amount to a Violation  of the Agricultural, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999 (Pub. L. No. 105-277, §741, 112 Stat. 2681 (codified at 7 U.S.C §2297), notes

## VIOLATION OF ECOA 15 USC  1691

Plaintiffs herein seek a determination that Defendants have continually violated ECOA by denying Plaintiffs debt relief afforded them by Agricultural, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999 (Pub. L. No. 105-277, §741, 112 Stat. 2681 (codified at 7 U.S.C §2297), notes)), and/or the Food, Conservation  and Energy Act of 2008, Pub. L.  110-234,122 Stat 923 §14011the Defendants, by denying debt relief for the operating loans that are part of the Shared appreciation agreement have violated ECOA   15 USC 1691.

## INJUNCTIVE RELIEF ALLEGATIONS

The Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 19 as though fully set forth verbatim herein.

1. Injunctive relief is appropriate in this case because firstly, the Plaintiffs have shown that If an injunction does not issue enjoining Defendants from foreclosing the real property of Plaintiffs the Plaintiffs herein will be irreparably harmed

2. Your Plaintiffs have no plain speedy and adequate remedy at law as Plaintiffs' real property is a unique asset and resource and money damages will not fully compensate Plaintiffs nor replace a family inheritance and heirloom.

3. Given the continuing and ongoing nature of Defendants violations of Plaintiffs' rights, absent injunctive relief continuing violation and foreclosure are likely to occur. And

4. Because of history of Plaintiffs' parents and grandparents as a successful claimants in the Pigford v. Glickman litigation and the clear guidelines for debt forgiveness established by the court, Plaintiff has a high likelihood of success on the merits herein as both their grandmother and father had discriminatory events determined by the adjudicator with regard to Operating Loans.

## PRAYER FOR RELIEF

1.   Wherefore, Your Plaintiffs pray for judgment as follows:

2. .That this court require a strict accounting by the Defendants of payments made by Plaintiffs and to which accounts those payments have been applied and after an accounting declare the proper credits owed to the Plaintiffs by the Defendants

3. That after an accounting and hearing , this court enforce the provisions of the consent decree and declare the proper amounts of the debt of the Estates of James Watson Jr.

Annie Watson and Rosa  Watson  amounts of debt eligible for discharge pursuant to the provisions of the Pigford Consent and enforce the provisions of the Consent Decree  .

4 This court order the removal of any lien wrongfully obtained by the Defendants through  improper credit to Plaintiffs herein.

5.Award judgment for the Petitioner (the Plaintiffs herein  in the amount of $500,000.00 plus pre-judgment interest for violations of ECOA.

6. That this Court permanently enjoin the Department, Secretary Perdue, the Department's staff, employees, and administrators from foreclosing enforcing, threatening to enforce , or otherwise giving effect to the Department's determination or intention to foreclose  the   Real property of Plaintiffs Wayne Watson, Troy Watson, Rhonda Watson, Deborah Watson and Fitzgerald Watson.

7.For an award of attorney's fees expenses and costs.

8..For such other relief as the court deems just and proper.

Dated  June  4, 2019.                    **JURY TRIAL DEMANDED**

Respectfully submitted

/s/ Paul A. Robinson Jr.

_____

Paul A. Robinson, Jr. 014464
3749 Marty Street
Memphis, T`N 38109
901-649-4053
problaw937@hotmail.com
Counsel for Plaintiff Wayne Watson

**I hereby affirm that I have read the foregoing complaint and the statements contained in the foregoing complaint are true to the best of my knowledge information and belief.**

**/s/ Deborah Watson**

**_____**

**Deborah Watson**


**Sworn to and Subscribed before me this  30th day of May 2019.**

**State of Mississippi**
**Bolivar County**


**/s/ Irma Forrest**

**Notary Public**

**My Commission Expires: July 2nd 2021**

I hereby affirm that I have read the foregoing complaint and the statements contained in the foregoing complaint are true to the best of my knowledge information and belief.

/s/ Troy Watson

_____

Troy Watson

State of Mississippi
Bolivar County

Sworn to and Subscribed before me this  30th day of May 2019.

Notary Public /s/ Irma Forrest

My Commission Expires: July 2, 2021

**I hereby affirm that I have read the foregoing complaint and the statements contained in the foregoing complaint are true to the best of my knowledge information and belief.**

**/s/ Rhonda Watson**

**_____**

**Rhonda Watson**

**State of Mississippi**
**Desoto County**

**Sworn to and Subscribed before me this  30th day of May 2019.**

**Notary Public: /s/ Krystle McDaniel**

**My Commission Expires: August 20, 2019**

I hereby affirm that I have read the foregoing complaint and the statements contained in the foregoing complaint are true to the best of my knowledge information and belief.

/s/ Fitzgerald Watson

_____
Fitzgerald Watson

State of Mississippi
Bolivar County

Sworn to and Subscribed before me this 30th day of May 2019.


Notary Public: /s/ Teresa Y. Brown

My Commission Expires: June 18th 2022

**I hereby affirm that I have read the foregoing complaint and the statements contained in the foregoing complaint are true to the best of my knowledge information and belief.**

**/s/ Wayne Watson**

**_____**
**Wayne Watson**

**State of Texas**

**Sworn to and Subscribed before me this  29th day of May 2019.**


**Notary Public: /s/  Lilian O. Agbor**

**My Commission Expires: August 10, 2022**